UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>STACIA SMITH | No. 02 CR 200-13<br><br>Judge Rebecca R. Pallmeyer |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION
FOR EARLY TERMINATION OF SUPERVISED RELEASE**

Defendant STACIA SMITH filed a motion for early termination of supervised release pursuant to 18 U.S.C. § 3583(e)(1). After considering the factors enumerated under 18 U.S.C. § 3553(a), including the nature and circumstance of the offense, the history and the characteristics of the defendant, and the need for the sentence imposed to afford adequate deterrence to criminal conduct, the government believes that early termination of supervised release at this time is not in the interest of justice.

    **A.    Defendant's Conviction and Sentencing**

On December 18, 2003, defendant was convicted by a jury of (1) conspiracy to distribute and possess with intent to distribute controlled substances, namely in excess of 50 grams of crack cocaine and 500 grams of cocaine, within 1000 feet of an elementary school, in violation of 21 U.S.C. §§ 846 and 860 (Count One), (2) two counts of using a communication facility to carry out the drug distribution conspiracy, in violation of 21 U.S.C. § 843 (b) (Counts 21 and 27), and (3) possessing a semiautomatic assault weapon in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A) and (B) (Count 25). R.667.

The Presentence Investigation Report ("PSR") determined that defendant assisted Troy Lawrence and his drug trafficking organization ("the Lawrence Organization") by delivering crack cocaine to the organization's drug sellers and by collecting drug proceeds when no other organizational member was available. PSR at 135-138. From approximately 1999 or 2000, until approximately 2002, defendant assisted the organization in this fashion "once a week or every other week." PSR at 136-138. The PSR calculated that during the time that defendant participated in the conspiracy, the Lawrence Organization distributed approximately "1,000 to 2,000 dime bags of crack cocaine in which each dime bag contained approximately .15 to .20 grams of crack cocaine, resulting in a conservative estimate that 150 grams of crack cocaine was sold on a daily basis." PSR at 77-80. The PSR therefore determined that the base offense level, pursuant to Guideline § 2D1.1(c)(1)(2004) was Level 38 because "the defendant was personally involved in the packaging of at least 1.5 kilograms of crack cocaine." PSR at 188-191. The PSR also added two offense levels for distribution within 1,000 feet of an elementary school pursuant to Guideline § 2D1.2(a)(1).

The PSR concluded that defendant had full knowledge of the conspiracy, and therefore was not entitled to a mitigating role reduction in the offense level. PSR at 213-219. It also concluded that defendant willfully obstructed justice by suborning the perjury of a trial witness. PSR at 220-231. Therefore, the total offense level was Level 42. Defendant was in Criminal History Category I, resulting in a guideline range of 360 months' to life imprisonment. PSR at 424-425.

In addition, because defendant was also convicted of possession of an assault weapon in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A), she received a sentence of 10 years' imprisonment for Count Twenty-Five, consecutive to the other counts of conviction. PSR 425-426.

The sentencing hearing was held on October 26, 2005, during which the Court adopted the PSR without change[1] and sentenced defendant to 11 years' imprisonment on Count One, 3 years' imprisonment on Counts Twenty-One and Twenty-Seven to run concurrent with Count One, and 10 years' imprisonment on Count Twenty-Five to run consecutive to the other counts, for a total term of 21 years' imprisonment. R1413. The district court further imposed a 10 year term of supervised release following imprisonment. *Id.*

Defendant appealed her conviction and sentence. *United States v. Seymour et al*, 519 F.3d 700 (7th Cir. 2008). The Seventh Circuit explained defendant's role in the conspiracy as follows:

> Smith, Troy Lawrence's girlfriend, worked for the Organization for an uncertain but undoubtedly long period of time. She worked for the Organization at both Wentworth Gardens and Claude Court as a runner and operated a stash house. Smith's home was used to conduct drug deals for wholesale quantities of cocaine, as well as to store those drugs and drug proceeds. Members of the Organization frequently bagged crack at Smith's house with several other members. According to [a cooperating co-defendant], Smith delivered drugs or picked up money approximately one hundred times at Wentworth Gardens and approximately twenty to thirty times at Claude Court. [Another cooperating co-defendant] also testified that Smith delivered drugs twice a week at Wentworth Gardens. Law enforcement intercepted a

---

[1] See Statement of Reasons attached to the Judgment and Conviction Order.

call from Troy Lawrence to Smith in which he told her to get $4,000 worth of crack, or roughly one hundred grams, to another member.

*Seymour*, 519 F. 3d at 708.

The Court also described the underlying facts of Count Twenty-Five:

> [On January 24, 2002], officers stopped Smith in her car after intercepting a phone call from Troy Lawrence placed at 11:23 p.m. During the call, Troy Lawrence had instructed Smith to: "[G]et up. Put something on. Bring me that black box thats in your closet." Smith responded, "In my closet?" Troy Lawrence then said: "The black box. You know my know my thing in there. You hear me?" Smith replied, "Yeah, yeah, yeah, yeah." Troy Lawrence then told her a second time to "[h]urry up." Moments later, officers stopped Stacia Smith and found a black box on the passenger seat with the words "Intra Tec" written on the outside of the box. Inside the box, officers found a loaded Intra Tec Model AB10 semi-automatic handgun.

*Seymour*, 519 F.3d at 706.

The Seventh Circuit affirmed the convictions and sentences. *Id*. at 716.

On December 19, 2016, President Barack Obama granted defendant's application for executive clemency, commuted her sentence of imprisonment, but left intact and in effect the 10 year term of supervised release. R.1842. According to defendant's probation officer, the clemency order allowed defendant to enter the Bureau of Prison's Residential Reentry Center at the Salvation Army in Chicago on January 23, 2017, and she was released from imprisonment on April 18, 2017.

### B. Supervised Release

Ms. Smith had been on supervised release for 17 months when she filed the instant motion. R.1851. By all accounts, she is doing quite well. According to the Probation Department, Ms. Smith has maintained steady employment since June

4

2017, and is currently assigned to the lowest form of monthly reporting, which does not even require her to meet in person with her probation officer.

The government is encouraged by Ms. Smith's progress, but nevertheless believes it is too soon for early termination of supervised release. The purposes of supervised release have been variously described as rehabilitation, deterrence, training and treatment, protection of the public, and the reduction of recidivism. *See United States v. Kappes*, 782 F.3d 828, 836 (7th Cir. 2015) (citations omitted). A district court may grant an early termination of a remaining term of supervised release after one year of supervised release has elapsed and after the court considers certain factors in 18 U.S.C. §3553(a), if the defendant's conduct and the interests of justice so warrant. 18 U.S.C. §3583(e)(1); *see also United States v. Lowe*, 632 F.3d 996 (7th Cir. 2011).

As set forth above, Ms. Smith was involved in a "massive drug trafficking operation" that included her possession of a loaded semi-automatic assault weapon. *Seymour*, 519 F. 3d at 711. At the sentencing hearing, the district court declined to impose the statutory minimum sentence for Ms. Smith, but acknowledged the mitigating fact that she was extremely dependent upon Troy Lawrence, who the court called the leader of the conspiracy and the father of her three children. *See* Statement of Reasons at 2. Troy Lawrence is serving a life sentence for his part in the instant offense. Ideally, Ms. Smith would have no further contact with the man who caused her to spend over 13 years in a federal prison, but a familial relationship keeps her on Mr. Lawrence's contact list. Additional time is needed to determine whether that

continued contact will have any effect on her rehabilitation since she was released from imprisonment.

The government is not seeking to diminish her progress over the past 17 months. She appears to have started a career in a field she enjoys, and she should be commended for that accomplishment. The PSR, however, noted that she worked for approximately the same amount of time as a Certified Nursing Assistant in the late 1990's when Troy Lawrence got her involved in the instant criminal offense, and again for the same amount of time while on pretrial release when both Troy Lawrence and Ms. Smith attempted to obstruct justice by suborning the perjury of a defense witness. In short, if Ms. Smith has not addressed her dependency on Troy Lawrence, there is a chance she will find herself back in trouble with the law. Continued supervision in the near future will help Ms. Smith maintain her path on the road to full rehabilitation and serve as a deterrence to further crime.

Defendant has successfully completed a mere 14% of her 10 year term of supervised release. She may eventually be a good candidate for early termination, but the government believes that now is not the time for it.[2]

---

[2] Defense counsel advised this court that she intends to play a three minute video in mitigation at Thursday's motion hearing. The government requested an opportunity to see the video, but as of the date of this response, has not received a copy.

## C. CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court deny defendant's motion for early termination of supervised release at this time.

Respectfully submitted,

JOHN R. LAUSCH, JR.
United States Attorney

By: /s/ *Ronald DeWald*
RONALD DEWALD
Assistant U.S. Attorney
219 South Dearborn St., Rm. 500
Chicago, Illinois 60604
(312) 886-4187

Dated: October 30, 2018

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 02 CR 200-13 |
| v. | ) | |
| | ) | Judge Rebecca R. Pallmeyer |
| STACIA SMITH | ) | |

## CERTIFICATE OF SERVICE

The undersigned Assistant United States Attorney hereby certifies that the **Government's Response to Defendant's Motion For Early Termination of Supervised Release** was served on October 30, 2018, in accordance with Fed. R. Crim. P. 49 and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.

*/s/ Ronald DeWald*
RONALD DEWALD
Assistant United States Attorney
219 S. Dearborn Street
Chicago, Illinois 60604
(312) 886-4187